PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DHSC, LLC d/b/a AFFINITY MEDICAL CENTER, | ) ) ) | |
| Plaintiff, | ) ) ) | CASE NO. 5:13CV1770 |
| v. | ) ) | JUDGE BENITA Y. PEARSON |
| CALIFORNIA NURSES ASSOCIATION / NATIONAL NURSES ORGANIZING COMMITTEE (CNA/NNOC), AFL-CIO, | ) ) ) ) ) | |
| Defendant. | ) ) | **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 19] |

### I. Background

Pending is Defendant California Nurses Association/National Nurses Organizing Committee, AFL-CIO's ("CNA") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [1]

ECF No. 19. CNA moves the Court to dismiss the Amended Complaint (ECF No. 18) filed by Plaintiff DHSC, LLC d/b/a Affinity Medical Center ("Affinity").

After considering Affinity's original complaint (ECF No. 1) and CNA's subsequent Motion to Dismiss (ECF No. 12), the Court ordered the Parties to jointly inform it of whether they believed CNA's pending Motion should be converted into one for Summary Judgment

---

[1] Some of the factual circumstances in this case are related to those decided in *Keener v. Nat'l Nurses Org. Comm.*, No. 5:13CV1073, 2014 WL 1333195 (N.D. Ohio March 31, 2014) (Pearson, J.), *aff'd as modified*, No. 14-3373, 2015 WL 3388651 (6th Cir. May 27, 2015).

5:13CV1770

under Fed. R. Civ. P. 12(d), or whether Affinity should be granted leave to amend its complaint. ECF No. 15.  In response to the Court's order, the Parties filed a Joint Report in which the Parties explained that they could not agree on how the litigation should be treated.  ECF No. 16 at PageID#: 187, ¶ 2.  Affinity requested leave to amend its complaint to remedy the Court's concerns articulated in the prior Order.  ECF No. 16 at PageID#: 188-90,  ¶ 3-15.  CNA requested that its prior Motion to Dismiss be treated as one for Summary Judgement to avoid further litigation.  ECF No. 16 at PageID#: 191-92, ¶ 16-21.  After reviewing the Parties' Joint Report, the Court granted Affinity's request to file an amended complaint.  Order (ECF No. 17). In the Amended Complaint (ECF No. 18), Affinity alleges that it has a valid implied-in-fact collective bargaining agreement ("Implied Agreement") with CNA which provides that both Affinity and CNA  must submit any unresolved disputes about compliance with, or construction of, the Implied Agreement to binding arbitration.  ECF No.18 at PageID#: 198, ¶ 3; 201, ¶ 18-20. Affinity further alleges that CNA breached the Implied Agreement by not submitting all unresolved disputes to final and binding arbitration.  ECF No. 18 at PageID#: 205, ¶ 30-32; 206, ¶ 33-35.

In early 2012, the Parties began negotiating a framework for an agreement governing their relationship during CNA's efforts to organize the registered nurses employed by Affinity, as well as the Parties' conduct during any collective bargaining negotiations that might follow. ECF No. 18 at PageID#: 200, ¶ 14.  The Parties produced two documents with the terms of their negotiations – a Labor Relations Agreement ("LRA") (ECF No. 18-1) and an Election Procedure Agreement ("EPA") (ECF No. 18-2).  ECF No. 18 at PageID#: 213, 232.  Both documents provide terms for arbitration of disputes:  the LRA provides that the Parties agree to submit "… any unresolved disputes about … [the LRA] to final and binding arbitration[;]" and the EPA

5:13CV1770

provides that "… either party may … submit [an] unresolved dispute … for final and binding resolution[.]"  ECF No. 18 at PageID#: 223, 249.  The Parties, however, did not sign or execute either the LRA or the EPA.  ECF No. 18 at PageID#: 200, ¶16.

On July 3, 2012, Jane Lawhon, CNA's counsel, sent an email to Affinity's representative, Don Carmody, with the subject line "Notice of Intent by NNOC-OH/NNY to Organize Affinity Medical Center in Massillon, Ohio."  In the body of the email, Lawhon wrote that CNA was providing Affinity with written notice of its intent to organize Affinity's registered nurses "[p]ursuant to Paragraph 1 of the Election Procedure Agreement[.]"  ECF No. 18-3 at PageID#: 251.

From July 9, 2012 to August 29, 2012, both Parties performed actions consistent with the terms detailed in the LRA and EPA, including:  jointly issuing a notice to Affinity's employees about CNA's organizing efforts and the upcoming union election; jointly conducting training sessions about the organizing process for supervisors, managers, and union organizers; and exchanging and pre-screening the other party's literature about the organizing effort.  Affinity provided CNA organizers with access to company break rooms, conference rooms, bulletin boards, and the cafeteria.  Affinity granted unpaid leave to Affinity employees who were facilitating CNA's organizing activities.  Both Parties also followed the dispute resolution procedures detailed in the LRA and EPA to settle about 29 disputes.  ECF No. 18 at PageID#: 204, ¶ 24.

On October 5, 2012, after Affinity's nurses elected CNA as their exclusive collective bargaining representative, the National Labor Relations Board ("NLRB") certified the result of the election.  ECF No. 18 at PageID#: 199, ¶ 8.

5:13CV1770

Affinity alleges that as early as September 13, 2012, CNA breached the Implied Agreement's terms for dispute resolution by refusing to submit unresolved disputes to final and binding arbitration. CNA refused to join Affinity in requesting that the NLRB hold resolution of its unfair labor practices challenges in abeyance or submit its challenges to arbitration. Instead, CNA actively participated in the NLRB's resolution of challenges. ECF No. 18 at PageID#: 205-206, ¶ 31-35.

Affinity now brings three claims against CNA as a result of Defendant's alleged breach of the Implied Agreement: (1) CNA's breach resulted in damages to Affinity, ECF No. 18 at PageID#: 206-207, ¶ 38-43; (2) Affinity is entitled to CNA's specific performance of the Implied Agreement's terms and conditions, including submission of unresolved disputes to final and binding arbitration, ECF No. 18 at PageID#: 207-208, ¶ 44-47; and (3) Affinity is entitled to a declaratory judgment mandating the Parties to submit all unresolved disputes under the Implied Agreement to final and binding arbitration. ECF No. 18 at PageID#: 208-209, ¶ 48-51. For the reasons given below, the Court denies CNA's Motion to Dismiss.

## II. Legal Standard

To survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). It also must "state a claim to relief that is plausible on its face." *Id.* at 570. Upon reviewing a Motion to Dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani,* 577 F.3d 642, 646 (6th Cir. 2009).

Claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere

4

5:13CV1770

possibility of misconduct, the complaint has alleged — but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). The factual allegations in the complaint "must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.     Discussion

CNA contends that Affinity's Amended Complaint (ECF No. 18) does not allege sufficient facts from which the Court can plausibly infer a valid implied-in-fact collective bargaining agreement that CNA breached by failing to submit all unresolved disputes to arbitration. ECF No. 19-1 at PageID#: 262. Affinity maintains that it entered into a valid implied-in-fact collective bargaining agreement with CNA because the Parties' conduct was consistent with previously negotiated terms included in the unexecuted LRA and EPA. ECF No. 20 at PageID #: 309.

Collective bargaining agreements are interpreted according to ordinary principles of contract law, at least to the extent those principles are consistent with federal labor policy. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 929 (2015). An implied-in-fact contract is "founded upon a meeting of minds, which … is inferred … from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923). A collective bargaining agreement can be shown

5:13CV1770

to exist by parties manifesting their intention to abide by agreed-upon terms through their conduct. *Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987). Damages for a breach of contract are measured by "the loss of what the contractee would have had if the contract had been performed[.]" *Chicago, M. & St. P. Ry. Co. v. McCaull-Dinsmore Co.*, 253 U.S. 97, 100 (1920).

Here, Affinity claims that the Parties' conduct throughout the 2012 union election period supports its conclusion that CNA and Affinity had an implied-in-fact contract based on previously negotiated terms, which mirror those in the unsigned LRA and EPA. ECF No. 20 at PageID #: 303-305. Affinity supports its position with several examples of the Parties' conduct, including:

- The July 3, 2012, email sent by CNA's legal counsel to Affinity's representative providing notice of CNA's intent to organize Affinity's nurses "[p]ursuant to Paragraph 1 of the Election Procedure Agreement[.]" ECF No. 18-3 .

- The Parties' July 10, 2012 joint announcement to Affinity's employees about CNA's organizing efforts, which provided that "the parties have come together and executed this Election Procedure Agreement and they are committed to abide by it." ECF No. 18-5 at PageID#: 254.

- The Parties' frequent use of the dispute resolution procedures set forth in the LRA and EPA throughout the union election period. ECF No. 18 at PageID#: 204, ¶ 24(l).

The Parties' conduct after the July 3, 2012 email plausibly suggests that CNA and Affinity had a meeting of the minds based, at least in part, on the previously negotiated terms which were included in the unexecuted LRA and EPA. The Parties jointly trained and communicated with Affinity employees, and vetted each other's communications. Affinity

6

5:13CV1770

granted CNA organizers access to the company's facilities and provided Affinity employees with unpaid leave to assist with CNA's organizing efforts. Both Parties used the dispute resolution procedures described in the LRA and EPA throughout the relevant period. In short, both Parties conducted themselves in a manner consistent with previously-negotiated terms.

CNA disputes Affinity's conclusion by pointing out that the LRA's terms cannot serve as evidence of the Parties' intent to be bound in a contractual relationship. ECF No. 19-1 at PageID#: 264-65. Defendant notes that the LRA provided that "[n]o draft of this Agreement prior to that which is signed between the parties shall be used by any party, or be admissible in any proceeding, to interpret the intent of the parties." ECF No. 18-1 at PageID#: 228. Thus, CNA concludes, this provision of the LRA clearly shows that the Parties intended the terms to be binding only after they had mutually signed and executed the LRA. ECF No. 19-1 at PageID#: 266.

CNA construes Affinity's reliance on the LRA too broadly. Affinity does not claim that the Implied Agreement is identical to the LRA; Affinity alleges that the Parties conducted themselves according to terms detailed in the LRA and EPA throughout the relevant period, including when both Parties used the dispute resolution procedures provided in those documents. ECF No. 20 at PageID: 309-10. The extent to which the Implied Agreement's dispute resolution terms mirror those of the LRA is a question of fact, and the Court must construe them "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). Therefore the Court finds it plausible that Affinity and CNA had an implied-in-fact contract which included dispute resolution terms similar to those of the unsigned LRA and EPA.

CNA also disputes that it had an implied-in-fact contract with Affinity because of the substance of the Implied Agreement. CNA maintains that the dispute resolution terms of the

5:13CV1770

Implied Agreement restrict CNA's statutory right to bring unfair labor practices disputes to the NLRB, despite the fact that CNA did not clearly and unmistakably waive its right to do so.  ECF No. 19 -1 at PageID #: 268-69.  Any agreement between the Parties that restricts CNA's statutory right to bring unfair labor practice disputes to the NLRB must be made by clear and unmistakable waiver.  *See, e.g. Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79 (1998) (holding that agreements to arbitrate statutory rights must be particularly clear).  ECF No. 19 -1 at PageID #: 269.  CNA supports its position by noting two substantially similar cases in which a court dismissed a complaint against it, *Hosp. of Barstow, Inc. v. California Nurses Ass'n*, No. EDCV 13-1063 CAS (DTBx), 2013 WL 6095559 (C.D. Cal. Nov. 18, 2013)*, appeal dism'd*, No. 13-57131 (9th Cir. July 2, 2014), and *Fallbrook Hosp. Corp. v. California Nurses Ass'n*, No. 13cv1233–GPC (WVG), 2014 WL 2779763 (S.D. Cal. June 19, 2014).  Both courts dismissed the complaints against CNA for similar reasons.  In *Barstow,* the plaintiff alleged it and CNA had an oral agreement that was breached when CNA filed an unfair labor practices charge with the NLRB.  *Barstow*, 2013 WL 6095559, at *7.  The *Fallbrook* court held that: (1) the plaintiff alleged an oral agreement; and (2) the plaintiff alleged that the breach occurred when CNA filed unfair labor practice charges with the NLRB.  *Fallbrook*, 2014 WL 2779763, at *6.

      This case is distinguishable from both *Barstow* and *Fallbrook* in two significant ways.  First, Affinity claims it had an implied-in-fact contract, not an oral contract.  ECF No. 20 at PageID#: 309.  Second, Affinity accuses CNA of breaching the Implied Agreement by failing to follow the contract's terms for dispute resolution, not by filing an unfair labor practice charge with the NLRB.  ECF No. 18 at PageID#: 204-205, ¶ 26.

      Unlike the plaintiffs in *Barstow* and *Fallbrook*, Affinity claims it had an implied-in-fact contract with CNA, not an oral contract.  Therefore, Affinity must show that the Parties

8

5:13CV1770

conducted themselves in a manner indicating mutual consent to the terms of the Implied Agreement, not produce evidence of an oral understanding between them. *See Baltimore & Ohio R.R. Co.*, 261 U.S. at 597 (holding that the terms of an implied-in-fact contract are inferred from the parties' conduct). Affinity supported its position with evidence that both Parties conducted themselves in accordance with the Implied Agreement, including when both Parties adhered to dispute resolution procedures documented in the LRA. ECF No. 20 at PageID#: 309.

Also unlike the plaintiffs in *Barstow* and *Fallbrook*, Affinity does not claim that CNA breached the Implied Agreement by filing an unfair labor practice charge with the NLRB. Affinity declares that CNA breached the Implied Agreement when CNA refused to follow the dispute resolution procedures for unresolved disputes. ECF No. 20 at PageID#: 318. This distinction is important because CNA could be bound to follow the Implied Agreement's dispute resolution terms without waiving its statutory right to file an unfair labor practice charge with the NLRB. As Affinity notes in its response to Defendant's Motion to Dismiss, the NLRB frequently permits parties to independently arbitrate disputes pending before the Board. ECF No. 20 at PageID#: 318. The NLRB acts "against the backdrop of a federal policy supporting a presumption in favor of arbitrability in the labor law context." *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 288 (6th Cir. 2014). The NLRB may use arbitration as an aid to settle disputes pending before it, but will only defer to an arbitrator's resolution when the Board is satisfied that the proceedings were fair and the arbitrator considered and clearly decided all unfair labor practice charges. *N.L.R.B. v. Magnetics Int'l, Inc.*, 699 F.2d 806, 811 (6th Cir. 1983). CNA could both file a charge with the NLRB and submit to private arbitration without breaching the Implied Agreement. Only the NLRB may decide to defer a pending charge to private arbitration. *Id*.

9

Case: 5:13-cv-01770-BYP  Doc #: 22  Filed:  08/31/15  10 of 11.  PageID #: 347

5:13CV1770

To summarize, Affinity alleges it had an implied-in-fact agreement with CNA that included dispute resolution terms from the unexecuted LRA and EPA. Both Parties consistently performed actions in accordance with the terms of the LRA and EPA, including 29 instances in which both Parties followed the dispute resolution procedures. The terms of the Implied Agreement did not require CNA to waive its statutory right to file unfair labor practices charge with the NLRB. Therefore, the Court finds that Affinity presents a plausible claim that the Parties entered into an implied-in-fact collective bargaining agreement that CNA breached by not submitting all unresolved disputes to binding arbitration. Accordingly, the Court denies CNA's Motion to Dismiss.

Affinity asserts three claims against CNA for breaching the Implied Agreement: (1) damages; (2) specific performance; and (3) declaratory relief. ECF No. 18 at PageID#: 206-09, ¶ 43-51. Affinity's claims for specific performance and declaratory relief are remedies to which it may be entitled. Those two claims address what Affinity would have had if CNA had followed the terms of the Implied Agreement. *See Chicago, M. & St. P. Ry. Co.,* 253 U.S. at 100 (holding that damages for breach of contract are measured by the loss of what the contractee would have had if the contract had been performed).

That brings us to Affinity's claim for damages. The Amended Complaint asserts that "Affinity has been damaged by [CNA's] breach" of the Implied Agreement because Affinity spent "… unnecessary time and expense … litigating disputes [with CNA.]" ECF No. 18 at PageID#: 207, ¶ 43. Affinity has failed to: allege any traditionally compensable contract damages; provide an explanation or justification for why it is entitled to alternative types of damages; or produce any factual support for its assertion of suffering unnecessary expense. In fact, what Affinity has done is assert "an unadorned, the-defendant-unlawfully-harmed-me

10

5:13CV1770

accusation." *Iqbal*, 556 U.S. at 678. Affinity's claim for damages is not dismissed is because the claim is not a stand-alone cause of action. Damages are a possible remedy for a breach of contract. The Court will consider, and if necessary, award damages to Affinity as justice requires.

### IV.     Conclusion

For the reasons stated above, the Court denies CNA's Motion to Dismiss. ECF No. 19. Accordingly, Affinity's claims remain.

IT IS SO ORDERED.

| | |
|---|---|
| August 31, 2015 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |