PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DHSC, LLC d/b/a AFFINITY MEDICAL CENTER, | ) | CASE NO. 5:13CV1770 |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| CALIFORNIA NURSES ASSOCIATION / NATIONAL NURSES ORGANIZING COMMITTEE (C.N.A./NNOC), AFL-CIO, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 45] |

Pending is Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 45). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. The Court has also considered the Memorandum by Amicus Curiae The National Labor Relations Board ("NLRB" or "Board") in Support of Defendant's Motion (ECF No. 63-2) and the oral arguments of counsel offered during the Telephonic Status Conference on March 14, 2016. For the reasons that follow, the motion is granted.

**I.**

In early 2012, the Parties began negotiating a framework for an agreement governing their relationship during Defendant California Nurses Association/National Nurses Organizing Committee, AFL-CIO's (Defendant or "Union") efforts to organize the registered nurses employed by Plaintiff DHSC, LLC, d/b/a Affinity Medical Center (Plaintiff or "Affinity"), as

well as the Parties' conduct during any collective bargaining negotiations that might follow. Amended Complaint for Breach of Contract, Specific Performance, and Declaratory Judgment and for a Speedy Hearing Under Fed. R. Civ. P. 57 (ECF No. 18) at PageID #: 200, ¶ 14. The Parties produced two documents with the terms of their negotiations—a Labor Relations Agreement ("LRA") (ECF No. 18-1) and an Election Procedure Agreement ("EPA") (ECF No. 18-2). Both documents provide terms for arbitration of disputes: the LRA provides that "[t]he Parties agree to submit any unresolved disputes about [the LRA] to final and binding arbitration[;]" (ECF No. 18-1 at PageID #: 223) and the EPA provides that ". . . either party may . . . submit [an] unresolved dispute about [the EPA] for final and binding resolution[.]" (ECF No. 18-2 at PageID #: 249). The Parties, however, did not sign or execute either the LRA or the EPA. ECF No. 18 at PageID #: 200, ¶ 16.

On August 20, 2012, the Union filed a petition with the NLRB seeking to represent registered nurses working at the Massillon, Ohio facility operated by Plaintiff. On August 22, 2012, Affinity and the Union signed a formal Consent Election Agreement (ECF No. 45-2 at PageID #: 541-43) using the standard Board form. The signed Consent Election Agreement was approved by the NLRB's Regional Director for Region 8 the same day it was signed. ECF No. 45-2 at PageID #: 543. Paragraph 12 gave the Regional Director final authority to rule on election challenges and objections. ECF No. 45-2 at PageID #: 542-43. Plaintiff does not dispute that neither party advised the Regional Director that any previous or conflicting agreements existed between them with respect to the election. Respondent's Post-Hearing Brief (ECF No. 45-3 at PageID #: 593). Thereafter, in accordance with the terms of the Consent

Election Agreement (ECF No. 45-2 at PageID #: 541-43), the NLRB's Regional office supervised and conducted the election held on August 29, 2012. One hundred votes were cast for the Union, 96 against, with seven challenged ballots.[1] Since the challenged ballots were sufficient in number to be determinative of the outcome of the election, the Regional Director investigated the matter, soliciting statements of position from Plaintiff and Defendant. The Union provided its position on the challenged ballots on September 17, 2012; Plaintiff did not file any statement or response regarding the challenged ballots. On September 5, 2012, Plaintiff filed with the Regional Director a statement of its objections to the election which made no mention of a private election agreement with the Union. *See* Report on Challenged Ballots and Objections (ECF No. 45-2 at PageID #: 545). In a letter dated September 7, 2012, the Regional Director explicitly requested that Plaintiff provide its supporting documents and advised that the failure to provide supporting evidence "will result in your objections being overruled without further investigation." *See* ECF No. 45-2 at PageID #: 548. On September 21, 2012, the Regional Director issued a report on the challenged ballots and objections, overruling Plaintiff's objections because no substantiating evidence had been submitted. ECF No. 45-2 at PageID #: 544, 548. The report concluded that four of the seven challenged ballots were cast by eligible voters. When these four ballots were counted, a majority of voters had voted in favor of Union representation. ECF No. 45-2 at PageID #: 544-49. On October 5, 2012, the Regional Director

[1] The Board agent supervising the election challenged the ballots of seven voters whose names did not appear on the list of eligible voters.

certified the Union as the National Labor Relations Act (NLRA) Section 9(a) representative of the nurses at Affinity. *See* ECF No. 45-2 at PageID #: 564;[2] ECF No. 18 at PageID #: 199, ¶ 8.

Following certification, Defendant requested that Plaintiff begin bargaining. After Plaintiff refused to bargain and denied Union representatives access to its facilities after the election, Defendant filed charges with the NLRB. The Regional Director issued a complaint alleging various violations of the NLRA. *See* Third Order Consolidating Cases, Amended Consolidated Complaint and Notice of Hearing (ECF No. 45-2 at PageID #: 509-21). In its Answer, Affinity raised several affirmative defenses, two of which are pertinent here: (1) that the Board's certification of the Union as exclusive bargaining representative was

> invalid, and unenforceable, inasmuch as the representation election . . .was held not only pursuant to a consent election agreement, but also pursuant to an oral "ad hoc" agreement between Affinity and the [Union] which provided that an arbitrator possessed exclusive jurisdiction to determine challenged ballots and objections related to the conduct of the representation election[;]

and (2) that pursuant to that same "oral 'ad hoc' agreement . . . an arbitrator possesses exclusive jurisdiction over the allegations set forth by the Complaint." Answer to Amended Consolidated Complaint (ECF No. 45-2 at PageID #: 531-32). Board deferral to arbitration, however, is completely discretionary. Memorandum of Opinion and Order (ECF No. 22) at PageID #: 346 ("Only the NLRB may decide to defer a pending charge to private arbitration."). On April 30,

---

[2] NLRA Section 9(a) states, in pertinent part:

> Representatives designated or selected for the purposes of collective bargaining by the majority of employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. . . .

29 U.S.C. § 159(a).

2015, a three-member panel of the Board issued its decision and order finding, *inter alia*, that Affinity had unlawfully refused to bargain with the Union and discriminatorily denied Union representatives access to its facility in violation of the Act. *DHSC, LLC, d/b/a Affinity Medical Center and National Nurses Organizing Committee (NNOC)*, 362 NLRB No. 78, 2015 WL 1956191 (2015). Relying on long-standing Board precedent, the panel majority rejected Affinity's procedural affirmative defenses regarding the arbitrator's exclusive jurisdiction under the purported "oral ad hoc agreement," finding that the parties had neither a collective bargaining agreement in place nor an established history of productive bargaining that would warrant the Board's deferring to any referenced arbitration provision. *Id.* at *1 n. 3[3] (citing *Arizona Portland Cement Co.*, 281 NLRB 304, 1986 WL 54325 at *1 n. 2 (1986); *United Technologies Corp.*, 268 NLRB 557, 1984 WL 36028, at *2 (1984); *San Juan Bautista Medical Center*, 356 NLRB No. 102, 2011 WL 702297 at *2 (2011)).[4]

The Board's unfair labor practice decision is currently pending before the United States Court of Appeals for the District of Columbia Circuit, on Affinity's petition for review and the NLRB's cross-application for enforcement of the order under § 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f). *DHSC, LLC v. NLRB*, Nos. 15-1426, 15-1499.

---

[3] Member Johnson also relied on the Federal Arbitration Act's requirement that agreements to arbitrate must be in writing. 9 U.S.C. § 2. *Id.*

[4] "[I]t is well-settled that the Board's authority and jurisdiction over questions of representation is exclusive; accordingly, the Board will not defer to a private dispute resolution mechanism, including proceedings under the AFL-CIO constitution, in deciding representation cases." *McLaren Health Care Corp.*, 333 NLRB 256, 2001 WL 120598, at *4 (2001).

On August 13, 2013, Plaintiff filed a Complaint for Breach of Contract, Specific Performance, and Declaratory Judgment and for a Speedy Hearing Under Fed. R. Civ. P. 57 (ECF No. 1) in the above-entitled action. On September 3, 2014, the Court granted Plaintiff leave to file an amended complaint. *See* Order (ECF No. 17). On September 17, 2014, Plaintiff filed an Amended Complaint (ECF No. 18) under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ECF No. 18 at PageID #: 198, ¶ 1. Affinity alleges that it has a valid implied-in-fact collective bargaining agreement ("Implied Agreement") with Defendant which provides that both Affinity and the Union must submit any unresolved disputes about compliance with, or construction of, the Implied Agreement to binding arbitration, including disputes related to any elections. ECF No.18 at PageID #: 198, ¶ 3; 201, ¶¶ 18-20. Affinity further alleges that Defendant breached the Implied Agreement by not submitting all unresolved disputes to final and binding arbitration. ECF No. 18 at PageID #: 205, ¶¶ 30-32; 206, ¶¶ 33-35.[5] Affinity brings three claims against Defendant as a result of the Union's alleged breach of the Implied Agreement: (1) Defendant's breach resulted in damages to Affinity, ECF No. 18 at PageID #: 206-207, ¶¶ 38-43; (2) Affinity is entitled to Defendant's specific performance of the Implied Agreement's terms and conditions, including submission of unresolved disputes to final and binding arbitration, ECF No. 18 at PageID #: 207-208, ¶¶ 44-47; and (3) Affinity is entitled to a declaratory judgment mandating the Parties to submit all unresolved disputes under the Implied Agreement to final and binding arbitration, ECF No. 18 at PageID #: 208-209, ¶¶ 48-51.

---

[5] Affinity is not seeking enforcement of the EPA and LRA, as those documents appear in the record; however, the Implied Agreement alleged in the Amended Complaint (ECF No. 18) mirrors previously-negotiated terms appearing in those documents.

Defendant moved the Court to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19), making multiple arguments in support, none of which questioned the Court's subject-matter jurisdiction. On August 31, 2015, the Court denied Defendant's Motion to Dismiss. *See* ECF No. 22. On September 14, 2015, Defendant filed an Answer (ECF No. 24). On December 4, 2015, Defendant filed the within Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 45), which the Court construes as a Rule 12(c) motion. *See* Order (ECF No. 47).

## II. Standards of Review

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A motion brought pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs are not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

Defendants' motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) for a lack of jurisdiction. Rule 12(b)(1) permits dismissal for "lack of subject-matter jurisdiction." Lack of subject-matter jurisdiction may be asserted at any time, either in a pleading or in a motion. *See* Fed. R. Civ. P. 12(b)(1). "[S]ubject-matter jurisdiction, because it involves a court's power to

hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U. S. 625, 630 (2002)). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A party making a "factual attack" on subject-matter jurisdiction challenges the actual existence of the court's jurisdiction, *i.e.*, a defect may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Challenges to subject-matter jurisdiction through a Rule 12(b)(1) motion to dismiss come in two different forms—facial and factual attacks. "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction. . . ." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *see also* 2 James Wm. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, . . . to resolve disputed jurisdictional facts.").

**III. Discussion**

Where a contract dispute brought under § 301 of the LMRA is "primarily representational," *i.e.*, a dispute within the primary jurisdiction of the NLRB, a district court may

not exercise jurisdiction if, as here, the Board has already exercised its jurisdiction and is considering, or has already decided the matter. *Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 693 (6th Cir. 2006). Plaintiff argues that the dispute in the case at bar falls outside of the scope of "primarily representational" matters. ECF No. 54 at PageID #: 932, 944; ECF No. 69 at PageID #: 1104, 1109; ECF No. 72 at PageID #: 1136. It contends "the issues decided by the NLRB are materially different than the issues currently pending before the Court, which arise as a result of the [Union's] breaches of the [Implied Agreement]." ECF No. 69 at PageID #: 1104.[6] That the § 301 disputes at issue in the case at bar are "primarily representational" is evident from Plaintiff's stated requests for relief: specific performance of the Implied Agreement's terms and conditions, including submission of unresolved disputes to final and binding arbitration, ECF No. 18 at PageID #: 207-208, ¶¶ 44-47; and a declaratory judgment mandating the Parties to submit all unresolved disputes under the Implied Agreement to final and binding arbitration. ECF No. 18 at PageID #: 208-209, ¶¶ 48-51.

This is not a case where "the issues before the district court and the NLRB were different . . . or where the NLRB explicitly declined to decide the issue and instead deferred to the district court." *DiPonio Constr. Co. v. Int'l Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744, 751 (6th Cir. 2012). On the contrary, the case at bar raises the precise issues previously addressed by the Board: whether the election challenges and objections and,

[6] In March 2016, the Court allowed Plaintiff to serve and file a list or discernment that offers clarification of the disputes Affinity claims should be subject to the arbitration provision of the Implied Agreement. *See* Minutes of Proceedings dated March 14, 2016. Affinity declined the offer. *See* ECF No. 72 at PageID #: 1136, ¶ 4.

ultimately, the Union's representation rights and Affinity's bargaining obligations, will be determined by an arbitrator or by the Board. The Board definitively decided that issue when it certified the Union as the employees' collective bargaining representative in October 2012 and exercised its discretion to decline deferral in April 2015. In short, as the Sixth Circuit observed in an analogous situation,

> the instant NLRB proceeding involves a representation issue, i.e., a determination of which union should represent the Olympic employees. There is a strong policy in favor of using the procedures vested in the Board for representational determinations in order to promote industrial peace. That the International has characterized the instant claim as a § 301 contract claim is of no consequence. [T]o fail to apply this policy [preemption] to § 301 actions would allow an end run around provisions of the NLRA under the guise of contract interpretation.

*Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Olympic Plating Indus.*, 870 F.2d 1085, 1089 (6th Cir. 1989) (internal citation and quotation marks omitted, brackets in original). *Accord* *Trafftech*, 461 F.3d at 695-96 ("When a dispute is primarily representational . . ., simply referring to the claim as a breach of contract [is] insufficient for the purposes of § 301 federal courts' jurisdiction . . .") (internal quotation marks omitted, brackets in original).

Since any decision in the case at bar cannot revoke the Board's certification of the Union as collective-bargaining representative or negate Affinity's resulting duty to bargain, entry of the requested order for specific performance or declaratory judgment would be a hollow act on the part of the Court. Mandating arbitration in the circumstances presented here would be, at best, an idle gesture and "[t]he law does not require the doing of a nugatory act." *Tacey v. Irwin*, 85 U.S. 549, 551 (1873). *See* *Fine v. CSX Transp., Inc.*, No. 99-1645, 2000 WL 1206526, at *2 (6th Cir.

Aug. 18, 2000) ("the law requires no one to do a vain or useless thing"). As a practical matter, no court could enforce an arbitrator's order purporting to undo the 2012 certification or finding of the Board that Plaintiff's actions did not so violate the NLRA. Affinity has not cited any case law to the contrary. Nor could it. Case law forecloses this possibility. *See, e.g.*, *Bakers Union Local No. 4 of Greater St. Louis v. Schnuck Baking Co. Inc.*, 614 F. Supp. 178, 182 (E.D. Mo. 1985) (refusing to compel arbitration under the parties' collective bargaining agreement because the dispute turned on question of representation that had already been decided by the Board under NLRA Section 9).

Deferral premised on the arbitration provision in the unsigned Election Procedure Agreement ("EPA") (ECF No. 18-2 at PageID #: 249) is also questionable given the commitment reflected in the signed Consent Election Agreement (ECF No. 45-2 at PageID #: 542-43) that gave the Regional Director final authority to rule on election challenges and objections. Such voluntarily signed election agreements are binding upon the parties. *NLRB v. General Tube Co.*, 331 F.2d 751, 753 (6th Cir. 1964). Moreover, the unsigned EPA itself conditioned Affinity's recognition and bargaining with the Union "upon the certification of the election results by the NLRB" (ECF No. 18-2 at PageID #: 234, ¶ 4(d))—a process over which the Board has sole discretion and need not defer to private arbitral mechanisms. *Grand Rapids Die Casting Corp. v. NLRB*, 831 F.2d 112, 116 (6th Cir. 1987).

## IV. Conclusion

Because Affinity has failed to identify any disputes that fall outside primarily representational preemption, Defendant's Motion to Dismiss for Lack of Subject-Matter

Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 45), which the Court construes as a Rule 12(c) motion, is granted.

IT IS SO ORDERED.

May 31, 2016
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge